IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS, DIVISION

Copy #1

Michael Jackson, # M15131

vs.

Director of Wexford Health

Sources, et al;

NO.

E-FILE

MOTION FOR APPOINTMENT
OF COUNSEL AND
IN FORMA PAUPERIS
ATTACHED.

15-920-NJR

COMLAINT WITH JURY DEMAND

## Introduction

This is a civil rights action filed by Michael Jackson, a state prisoner for damages and injunctive relief under 42 U.S.C. S. 1983 alleging denial of medical care, cruel and unusual punishment, deliberate indifference, retaliation and Due process violations in violation of the Eighth, First and Fourteenth Amendments to the United States Constitution.

## Jurisdiction

1. The Court has Jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. S. 1331 (1) and 1343.

2. The Court has Supplemental Jurisdiction over the plaintiff's state law tort claims under 28 U.S.C. S. 1367.

## Statement of Facts

1

The plaintiff, Michael Jackson, a severely mentally ill prisoner suffering from mental illness since childhood, brings this lawsuit against the defendants in their individual and official capacity and alleges that the defendants, individually and according to a widespread practice and policy and gaps in expressed policies, violated his state and federal rights continuously and repeatedly for the past 5 years in several prisons throughout Illinois.

1. In March, 2010 the plaintiff, Jackson got into a fight with his cell-mate and was taken to segregation. He was found guilty of Assault. At the time, the plaintiff was experiencing a mental breakdown. His medications were not working. And the mental health staff were overburdened with prisoner-patients and understaffed and undertrained. So no mental health staff appeared at plaintiff's adjustment committee hearing to let them know he was mentally ill and not responsible for his actions and mental break-down. Mental health staff, nurses, prison doctors and officers knew Jackson was on psychotrophic medications for his mental health condition. Jackson received 3-months segregation locked in a small cell. This occurred at Western Correctional Center.

2

2. Due to being locked in the cell 24 hours a day and not receiving sufficient mental health treatment and evaluations, other than the measley three minutes that mental health staff makes their rounds and talk to prisoner-patients while standing outside their segregation doors and expose patients medical and mental health and confidential business, the plaintiff began to experience a deeper mental breakdown, Because of which, he received several more disciplinary tickets, increasing his segregation time. Again, no mental health staff appeared at Jackson's disciplinary hearing on his behalf. No mental health staff offerred Jackson his needed treatment.

3. On 9-9-2010, 6 months after Jackson had been in segregation, an officer opened Jackson's cell door, frustrated with Jackson's antics and acting out, opened or spit in Jackson's food tray and cursed Jackson. Jackson then punched the officer who had no business opening his cell door and coming into his cell. OR spitting in his food tray. A disciplinary ticket was written where this officer tried to lie and say Jackson had managed to open his own cell door. But it was

3

later thrown out because staff knew that 'that lie would not work. Opening plaintiff's cell door and going into his cell violated prison rules. —

4. Mental health staff kept putting Jackson on a watch, "stating that he was homicidal. A watch is when a prisoner is stripped naked, given a paper gown or suicide blanket and have all of his property taken from him, books and all; And where officers walk past the cell and look in every 10, 15 or 30 minutes. Watch's are used as a form of punishment also. The psychiatrist, psychologist, mental health staff or warden Terry Williams did nothing to help the plaintiff. They disregarded his serious medical needs and instead, punished him repeatedly. And then transferred him to Pontiac Correctional Center, a maximum-security prison in Illinois; A much worser prison. And to segregation. Defendants failed to send plaintiff out to an outside mental health facility or to a mental health specialist. On october 14, 2010 plaintiff transferred to Pontiac, C.C. Before leaving Western, C.C. plaintiff had been repeatedly assaulted by

4

Prison guards and given 5 disciplinary staff assault charges.

5. Jackson began experiencing an even worser mental breakdown because of this and while at Pontiac Correctional Center. He repeatedly cut and mutilated himself; swallowed sharp-metal objects; swallowed spoons; and sticking ink pens inside his penis. Jackson received at least 97 disciplinary charges while at Pontiac Correctional Center, ranging from various things, including disobeying a direct order, impairment of surveilance, intimidation of threats, etc; . DR. Garland, DR. Marano, Ms. Moss, MR. Agnes, MR. Alice, Ms. Duckworth and DR. Matthews are all mental health staff who plaintiff cried out to for help. But who disregarded his serious medical needs for help. DR. Marano refused to transfer plaintiff to a more suitable mental health unit called South-Mental. None of these defendants appeared at plaintiff's disciplinary hearings on his behalf to let them know of his mental illness and mental condition.

5

6. Neither of the defendants took sufficient time out to evaluate the plaintiff. Neither of the defendants referred the plaintiff to an outside mental health facility. Instead, they allowed the plaintiff to accumulate a multitude of disciplinary tickets which earned him indefinite segregation and a deteriorating serious mental health condition. The wardens of Western, C.C. and Warden Beasten of Pontiac, C.C. did not have a policy in play for the mentally ill during disciplinary hearings. These defendants did not train their staff to deal with the mentally ill. But instead, they became frustrated with plaintiff, punished him and retaliated against him. And assaulted him repeatedly. Mental health staff had no policy in place to deal with the mentally ill in segregation and during disciplinary hearings. Instead, they punished the plaintiff by keeping him isolated on a watch, like the officers, who punished plaintiff by keeping plaintiff isolated and locked away in a seg. - segregation cell.

6

7. This only caused plaintiff's mental illness and condition to further deteriorate.

8. Out of all of this time, every time the plaintiff tried to get a grievance form from officers or counselors, they ignored his requests. And whenever the plaintiff got a grievance from another inmate and filled it out as an Emergency, he never heard anything back.

9. To further punish the plaintiff, doctors gave him medications to knock him out and which gave him severe side-effects and made his condition worse. medicines like haldog, and Thorozine. Haldog would cause the plaintiff to sleep for days. And then cause him to have head-aches and snapp out upon awakening. The plaintiff was shot up against his will with haldog for over 1 year, Plaintiff experienced shaking, slobbering un-controllably and snot coming out of his nose. All of the medicines prescribed to plaintiff made him feel not like himself. None of the defendants in this lawsuit had a policy of appointing inmate litigators to assist the mentally ill in legal matters and at disciplinary hearings.

A clear violation of prison rules and policy.

10. Plaintiff transferred to Statesville, C.C. in December, 2012, where he began swallowing batteries, glass, sticks, and sticking chicken bones inside his penis. He caught more disciplinary tickets like, staff assaults, sexual misconduct etc;. Due mostly to retaliation and punishment and a mental breakdown stemming in part from atypical hardship that comes from long-term segregation, — Statesville Correctional Center is another maximum security prison. Plaintiff again, went from one segregation to another when he transferred from Pontiac, C.C. to Statesville, C.C. .

11. Plaintiff was sent to St. Joseph hospital for a blood transfusion while at Statesville, C.C. . The hospital is located in Joliet, Illinois. He informed doctors there that he was trying to harm himself. He never saw any mental health personnel at St. Joseph's . Nor was he put on a mental health evaluation. Plaintiff was sent to St. Joseph's a total of seven (7) times, Not one time did he see a psychiatrist oR

8

psychologist. St. Joseph's had no existing policy to deal with the mentally ill. Nor did they refer the plaintiff to a mental health specialist. Lack of a policy to deal with the mentally ill is actionable; And violates Federal law, state law and the U.S. constitution.

12. Because of his deteriorating mental condition, being consistently housed in segregation, not receiving needed medical and mental health treatment and acting out, plaintiff was also assaulted by guards at Statesville Correctional Center. And received a staff assault charge.

13. In June, 2013, plaintiff transferred back to Pontiac Correctional Center; where he began to cause more bodily harm to himself.

14. DR. Kelly, DR. Obasis, MS. Larry and ms. Heart, mental health staff at statesville, C.C., did nothing to treat plaintiff's serious medical need. None of these defendants showed up at any of plaintiff's disciplinary hearing to tell the Committee that he was mentally ill and experiencing a mental breakdown.

9

15. None of the defendants were there to tell the committee that plaintiff's segregation was having atypical hardship on a prisoner who was already mentally ill. And that long-term isolation and segregation can drive a sane man insane. So plaintiff' condition continued to deteriorate. Plaintiff was not referred to a mental health specialist. mental health at Statesville, just like at Pontiac, C.C, and Western, C.C. — a medium security prison, was not involved much at all in plaintiff's mental health condition and serious medical needs. This is why they did not communicate to the officers, the wardens. and the Committee on plaintiff's behalf. This is why plaintiff was not referred to a mental health institution as he was as a child. Information that is in the hands of each and every defendant in the case, Warden Limpski had a policy of punishing the mentally ill, And convicting them unfairly at disciplinary hearings;

10

All of the wardens and defendants in this lawsuit had this policy and lack of policies that violated plaintiff's rights.

16. As a Kid, the plaintiff was put in Heartgrove mental institution Seven (7) times.

17. In January, 2015, approximately 5 years after being in disciplinary-Segregation, plaintiff was transferred to Menard Correctional Center.

18. Prison staff working the property room at Menard, C.C. and Major Westfall told him that his television was lost. Plaintiff found out that it had been broken due to retaliation. Plaintiff began cutting himself and acting out. And in June, 2015, plaintiff began swallowing razor blades and putting blades inside his rectum and putting things inside his penis. After Swallowing a razor blade on June 26, 2015, plaintiff was given an X-Ray at Menard, Showing that the blade was indeed inside him. Defendants Sent plaintiff to Memorial hospital, in Chester, Illinois;

11

for a blood transfusion but failed to note that the Plaintiff had a blade inside him; That he had swallowed a razor blade.

After coming from the hospital 2 days later, on June 7, 2015, plaintiff had a bowel movement and the blade came out. He showed the blade Sgt. Cox and a Lieutenant who used to be in Internal Affairs. C/o McClure, C/o Slabens, and C/o Leposky were there.

They asked plaintiff to give them the blade. Plaintiff refused and then swallowed the blade. The Lieutenant and Sgt. Cox then mased-pepper sprayed the plaintiff, causing him to choke and have difficulty breathing. They made plaintiff cuff up, grabbed him by his throat, took him out of the cell, up to another floor, inside the small barber-closet-room and beat him. They assaulted plaintiff. They then let him see nurse stephanie who did not record any of his injuries, complaints of stomach and side pains or back pains.

12

They beat plaintiff for about 20 minutes. The defendants did not send plaintiff to the health care for medical treatment and X-rays. He was taken back to his cell.

The next day, on 6-8-2015, plaintiff was given an X-ray only. The X-ray showed that there was a blade inside plaintiff. Defendants did not send the plaintiff out to have the blade removed. DR. Trost authorized the X-ray. The plaintiff was not seen or examined by DR. Trost, Before or after he swallowed the blade and had the X-ray.

For months now, plaintiff has complained to DR. Trost, mental health staff and nurses about urinating blood. But they have all disregarded his complaints and cries for help. Plaintiff complained to DR. Joseph as well. And about his stomach and side and back pains. But his cries were ignored.

13

DR. Baige, DR. Sheasian, MS. Franklin, DR. G, MS. Thomas, MS. Meyers and DR. Butler, all mental health staff that knows of plaintiff's deteriorating mental condition at menard, C.C., was deliberately indifferent to his serious medical needs. most of the staff, like MS. Franklin, MS. Thomas, and MS. Meyers are not licensed to do mental health work. But in order to save money warden, Butler has hired them to do work they are not qualified to do. The defendants has not done any thing to help plaintiff's mental need and condition. And has done nothing to remove this atypical hardship off of the plaintiff and his being in segregation. indefinitely and his losing good-conduct credit based on unwarranted and unfair disciplinary tickets he received due to his severe, serious mental illness-condition. And due to a lack of and breakdown policies to support the mentally ill in and during disciplinary hearings. And due

14.

to a lack of medical staffing. And a policy that promotes saving money and not sending out patients to mental health specialists and mental health institutions when they really need Expert Evaluations. Experts who are not understaffed and over burdened with patients. Experts who Knows the difference between a suitable mental health environment and a non-suitable prison-Segregation cell. — Like the previous prisons, the mental health consists of mental health staff coming outside plaintiff cell and asking him in front of other officers and inmate residents, does he feel suicidal; does he feel like hurting himself and others. No real mental health therapy occurs. Mental health staff has done nothing to help plaintiff get out of segregation. That's deliberate indifference to his serious medical needs as well.

C/o Cox, C/o McClure, C/o Stabeus, C/o

15

Leposky attacked the plaintiff and watched him being attacked. So did the John Doe Lieutenant.

The director of Wexford Health Sources, The mental health director of Wexford Health Sources, Salvador Goddinez, and IDOC director Donald Stolworthy violated the plaintiff's rights by having a policy or lack thereof, of being deliberately indifferent to the serious medical and mental health needs of the plaintiff; By having a policy of punishing plaintiff, a mentally ill prisoner, with long-term segregation, loss of good-time, suicide watches, and loss of other priveleges. The defendants have a policy or lack thereof of training officers and disciplinary committees to deal with the mentally ill; And a policy or lack thereof of mental health staff not alerting officers and prison staff to the mentally ill, who are not responsible for their misconduct. And defendants

have a policy or lack thereof of retaliating against, attacking, assaulting and disciplining the plaintiff and inmates who are mentally ill, when they feel they've acted out.

## RELIEF REQUESTED

THE plaintiff prays that this Honorable Court finds that the defendants violated plaintiff's state and Federal Rights and award plaintiff with compensatory, consequential, punitive and any other Damages the Court deems fit. And Grant the plaintiff immediate - injunctive relief from Segregation, have his good-time restored, and send plaintiff to a mental institution for evaluation, and then to a medium-security prison that offers better mental health services, like Dixon Correctional Center, in Illinois.

Michael Jackson

Sign

DATE  8-10-2015

This Complaint was written by a Jailhouse lawyer on plaintiff's behalf. JAILHOUSE LAWYER
Signed

Michael Jackson

# M15131

P.O. BOX - 1000

Menard, IL 62259

Defendant 1 - director of Wexford Health Sources is employed as director of Wexford of IDOC
Defendant is employed by the State through Contract
1301 Concordia Cf. Springfield, IL 62794

Defendant 2 - Mental Health director of Wexford Health Sources - IDOC
defendant is employed by the State through Contract
1301 concordia ct, Springfield, IL 62794

Defendant 3 - Salvador Godinez is employed as director of IDOC - by the State
1301 Concordia ct, Springfield, IL 62794

Defendant 4 - Donald Stolworthy is employed as new director of IDOC - by the State
1301 Concordia Ct., Springfield, IL 62794

Defendant 5 - doctor / psychiatrist is employed as psychiatrist at Western, C.C. - 2500 Rt. 99 South
Mt. Sterling, IL 62353

Defendant 6 - Mental health psychologist is employed as mental health doctor at Western, C.C. 2500 Rt 99 South, Mt. Sterling, IL 62353

Defendant 7 - Tarry Williams - is employed as warden of Western, C.C.

Defendant 8 - DR. Garland - is employed as psychiatrist at Pontiac Correctional Center

Defendant 9 - DR. Marono - is employed as psychologist at Pontiac, C.C.

Defendant 10 - MS. Moss - is employed as mental health staff at Pontiac, C.C.

Defendant-11- <u>MR. Angus</u> - is employed as mental health Staff at Pontiac, C.C.

Defendant-12- <u>M.R. Allie</u> - is employed as mental health Staff at Pontiac, C.C.

Defendant-13- <u>MS. Duckworth</u> - is employed as mental health Staff of Pontiac, C.C.

Defendant-14- <u>DR. Matthews</u> - is employed as psychiatrist at Pontiac, C.C.

Defendant-15- <u>Warden Beasten</u> - is employed as Warden of Pontiac, C.C.

Defendant-16- <u>DR. Kelly</u> - is employed as psychiatrist at Statesvill Correctional center

Defendant-17- <u>DR. Obasis</u> - is employed as psychiatrist at States ville, C.C.

Defendant-18- <u>MS. Larry</u> - is employed as mental health Staff at Statesville, C.C.

Defendant-19- <u>MS. Heart</u> - is employed as doctor at Statesville, C.C.

Defendant-20- <u>Warden Limpski</u> - is employed as Warden of Statesville, C.C.

defendant- 21- DR. Butler - is employed as psychiatrist at Menard Correctional Center

defendant-22 - DR. Baige - is employed as as psychologist at Menard, C.C.

defendant-23 - DR. Sehasian - is employed as psychiatrist at Menard, C.C.

defendant- 24 - MS. Franklin - is employed as An unlicensed Mental health worker

defendant-25- DR. G - is employed as mental health doctor at Menard, C.C.

defendant-26- DR. Trost - is employed as doctor and Medical director at Menard, C.C.

defendant-27- DR. Joseph - is employed as a doctor at Menard, C.C.

defendant-28- Officer Cox - is employed as 3-to-11 shift seargeant

defendant- 29 - John Doe - is employed as 3-to-11 shift Lieutenant.

defendant-30 - MS. Stephanie - is employed as nurse at Menard, C.C.

defendant-31-C/O McClure - is employed as 3-to-11 shift officer at menard, C.C.

defendant-32- C/O Slabens - is employed as 3-to-11 shift officer at menard, C.C.

defendant-33- C/O Leposky- is employed as 3-to-11 shift officer at menard, C.C.

defendant-34- Memorial hospital Agency and Hospital in chester, Illinois

defendant-35- St. Joseph hospital Agency and Hospital in Joliet, Illinois

more Defendant will Be Added, as there are A Host of other John and Jane Does defendant

I, Michael Jackson, have never filed any lawsuits before, I am mentally ill, I have been denied grievances by staff at all prisons in Illinois for over 5 years and since I've been in Segregation. The grievances I did get, I got from inmates, I turned them in as emergencies. But I never hear anything back. I guess they do me like this because of my mental illness. And in order to hide all of their wrong against me.