**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MICHAEL JACKSON, # M-15131,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-cv-920-NJR** |
| | ) | |
| **WEXFORD HEALTH SOURCES** | ) | |
| **(Director), et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He sues a host of officials at four different prisons where he has been incarcerated since 2010. Two hospitals are also included among the Defendants. Plaintiff claims that various Defendants have been deliberately indifferent to his serious mental health condition, as well as to other medical needs. Further, several Menard officers physically assaulted Plaintiff in June 2015.

According to the complaint, Plaintiff has suffered from mental illness since childhood. While he was in prison at Western Illinois Correctional Center ("Western") in March 2010, he was having a mental breakdown and got into a fight with his cellmate (Doc. 1, p. 2). He was on psychotropic medications at the time, but they were not working. He was charged with a disciplinary infraction; he was found guilty after a hearing where no mental health staff participated to inform the disciplinary committee that Plaintiff was mentally ill and not responsible for his actions. He was punished with three months in a small segregation cell.

During Plaintiff's time in segregation, he received no meaningful mental health

treatment, and his mental breakdown became worse. Because of this, his behavior caused him to incur several more disciplinary tickets, and his segregation time was extended. Again, no mental health staff appeared at his hearing, and he got no effective treatment.

On September 9, 2010, when Plaintiff had been in segregation for six months, an unnamed officer spit in his food tray and cursed him in response to Plaintiff's "acting out" (Doc. 1, p. 3). Plaintiff punched the officer, but the disciplinary ticket issued against him was later thrown out. Unnamed mental health staff frequently put Plaintiff on "watch" for being homicidal or suicidal, which Plaintiff alleges was done as a form of punishment. Defendant Warden Williams did nothing to help him. He was repeatedly assaulted by guards at Western.

On October 14, 2010, Plaintiff was transferred to Pontiac Correctional Center ("Pontiac"), a maximum security prison, where he remained in segregation. Those circumstances led to a worse mental breakdown, during which Plaintiff repeatedly cut and mutilated himself, swallowed spoons and sharp metal objects, and inserted ink pens into his penis (Doc. 1, p. 5). He incurred at least 97 disciplinary charges at Pontiac. Plaintiff sought help from mental health staff, including Defendants Garland, Marano (or Marono), Moss, Angus (or Agnus), Alice (or Allie), Duckworth, and Matthews,[1] but they disregarded his need for treatment. They did not evaluate him or refer him to an outside mental health facility. None of them testified to Plaintiff's mental illness at his disciplinary hearings. Plaintiff's disciplinary infractions earned him indefinite segregation, which led to further deterioration of his mental health condition.

Pontiac Warden Defendant Beasten had no policy to assist mentally ill prisoners during disciplinary hearings, and he failed to train his staff to deal with mentally ill inmates. As a result,

---

[1] Plaintiff uses two different spellings in the complaint for the surnames of Defendants Marano/Marono Angus/Agnus, and Alice/Allie. Defendant Dr. Matthews was inadvertently omitted from the docket sheet; the Clerk will be directed to add this party.

prison staff punished, assaulted, and retaliated against Plaintiff for his behavior.

Unidentified doctors gave Plaintiff strong medications against his will, such as Haldol and Thorazine, which made him sleep for days and made him not feel like himself. The medicines gave him headaches and other serious side effects (Doc. 1, p. 7).

In December 2012, Plaintiff was transferred to Stateville Correctional Center ("Stateville"), where the above patterns continued. He remained in segregation and again swallowed harmful objects, mutilated himself, incurred disciplinary tickets for run-ins with staff, and was assaulted by guards. While at Stateville, he was sent to Defendant St. Joseph Hospital in Joliet, Illinois, for a blood transfusion. Plaintiff told the doctors there that he was trying to harm himself, but he was never given a mental health evaluation or examined by any mental health staff at the hospital. He was sent to this hospital a total of seven times, but was never referred to a mental health provider because of St. Joseph's lack of a policy to deal with mentally ill patients.

Defendants Kelly, Obasis, Larry, and Heart (Stateville mental health staff) did nothing to treat Plaintiff's serious mental illness, and they never testified regarding his mental condition at any of Plaintiff's disciplinary hearings (Doc. 1, p. 9). They also never referred him to a mental health specialist. Plaintiff claims that similar to all of the named wardens and Defendants, Stateville Warden Defendant Limpski had a policy of punishing mentally ill prisoners and unfairly convicting them at disciplinary hearings (Doc. 1, pp. 10-11).

In June 2013, Plaintiff was transferred back to Pontiac, where he remained until January 2015. He continued to cause bodily harm to himself (Doc. 1, pp. 9, 11). He had spent approximately five years in disciplinary segregation by the time he was moved to Menard in January 2015.

After the transfer to Menard, Plaintiff learned that his television had been broken "due to retaliation" (Doc. 1, p. 11). He began cutting himself and acting out. In June 2015, he began swallowing razor blades, putting blades into his rectum and inserting other objects into his penis. He was given an x-ray on June 2, 2015, which showed a blade inside him. Defendants (he does not specify which individuals) sent Plaintiff to Defendant Memorial Hospital in Chester, Illinois, for a blood transfusion, without informing the hospital that he had swallowed a razor blade (Doc. 1, pp. 11-12).

On June 7, 2015, Plaintiff returned from the hospital. He had a bowel movement which expelled the razor blade. Plaintiff showed the blade to Defendants Cox, an unknown Shift Lieutenant, McClure, Slabens, and Leposky, who asked him to give them the blade. Plaintiff refused, and he swallowed the blade again. Defendants Cox and the Lieutenant sprayed Plaintiff with mace and pepper spray, which made him choke and have difficulty breathing. They cuffed him, grabbed him by the throat, and then took him into another room where they and Defendants McClure, Slabens, and Leposky beat him for about twenty minutes (Doc. 1, pp. 12-13, 16). They let him see Defendant Nurse Stephanie, but she did not record his injuries or complaints of pain.

The next day Defendant Dr. Trost authorized Plaintiff to have an x-ray, which again showed a blade inside him. But Defendant Trost did not examine or treat Plaintiff after this test. For several months, Plaintiff complained to Defendant Trost, Defendant Dr. Joseph, and other staff about blood in his urine, and pain in his stomach, side, and back. They ignored his complaints.

Menard mental health staff Defendants Baige, Sehasian (or Sheasian), Franklin, Dr. G,[2]

---

[2] Plaintiff includes "Dr. G" (mental health doctor at Menard CC) in his list of Defendants (Doc. 1, p. 20). At the time the case was opened, the Clerk designated this individual as one of four Unknown Party Defendants. Plaintiff may need to identify this Defendant with more specificity in order for service on him/her to be accomplished.

Ms. Thomas, Ms. Meyers,[3] and Dr. Butler are aware of Plaintiff's deteriorating mental health condition, but have failed to treat him and have done nothing to help him get out of segregation. Menard Warden Butler (who is not named among the Defendants) has hired unqualified mental health staff (such as Ms. Franklin, Ms. Thomas, and Ms. Meyers) in order to save money.[4] There is no policy at Menard to support mentally ill prisoners facing disciplinary action. The prison is understaffed to meet prisoners' mental health needs, and mentally ill prisoners are not sent to specialists for evaluation.

The Director and Mental Health Director of Wexford Health Sources, together with Defendants Godinez and Stolworthy (IDOC Directors), maintain a policy and practice of failing to treat Plaintiff's mental illness, punishing him with long-term segregation, loss of good time and other privileges, and imposing suicide watches; failing to train prison officers and disciplinary committees to deal with mentally ill prisoners; and failing to have mental health staff alert officers and other staff to mentally ill prisoners' lack of control over their misconduct (Doc. 1, p. 16).

Plaintiff seeks damages and injunctive relief, in the form of release from segregation, restoration of his lost good time, referral for a mental health evaluation, and a transfer to a medium-security prison that offers better mental health services. He notes that his complaint was written for him by a jailhouse lawyer.

---

[3] Again, Plaintiff uses two different spellings for the surname of psychiatrist Dr. Sehasian/Sheasian. Ms. Thomas and Ms. Meyers are described in the body of the complaint as two of the mental health staff members who failed to treat Plaintiff, but they are not included in Plaintiff's list of Defendants on pp. 18-21 of the complaint. Because it appears that Plaintiff intended to include these individuals as Defendants, the Clerk shall be directed to add Ms. Thomas and Ms. Meyers as parties to this action.

[4] The complaint does not clearly indicate that Plaintiff intended to assert any claim against Menard Warden Butler, therefore, any such claim should be considered dismissed without prejudice at this time.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under Section 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all

future pleadings and orders, unless otherwise directed by a judicial officer. The designation of these counts does not constitute an opinion as to their merit.

**Count 1:** Eighth Amendment deliberate indifference claim against Defendants Wexford Health Sources (Director and Mental Health Director), Godinez, and Stolworthy, for maintaining policies and practices, including the failure to train their employees, that resulted in the denial of mental health treatment to Plaintiff during his incarceration in Western, Pontiac, Stateville, and Menard; as well as his continued placement in segregation as punishment for behavior caused by his mental illness;

**Count 2:** Eighth Amendment claim against Defendant Wardens Williams, Beasten, and Limpski, for failing to train staff to deal with mentally ill prisoners such as Plaintiff, maintaining a policy of punishing Plaintiff and other mentally ill prisoners for behavior caused by mental illness rather than providing mental health treatment, and failing to provide adequate mental health services to Plaintiff while he was in punitive segregation;

**Count 3:** Fourteenth Amendment due process claim against Defendant Wardens Williams, Beasten, and Limpski, for failing to have a policy to assist mentally ill prisoners facing disciplinary hearings, causing Plaintiff to incur disciplinary sanctions including long-term segregation for behaviors caused by his mental illness;

**Count 4:** Eighth Amendment deliberate indifference claims against Pontiac mental health provider Defendants Garland, Marano/Marono, Moss, Angus/Agnus, Alice/Allie, Duckworth, and Matthews, for failing to provide Plaintiff with treatment for his serious mental illness;

**Count 5:** Eighth Amendment deliberate indifference claims against Stateville mental health provider Defendants Kelly, Obasis, Larry, and Heart, for failing to provide Plaintiff with treatment for his serious mental illness;

**Count 6:** Eighth Amendment deliberate indifference claims against Menard mental health provider Defendants Baige, Sheasian/Sehasian, Franklin, Dr. G, Thomas, Meyers, and Dr. Butler, for failing to provide Plaintiff with treatment for his serious mental illness;

**Count 7:** Fourteenth Amendment due process claims against mental health provider Defendants Garland, Marano/Marono, Moss, Angus/Agnus, Alice/Allie, Duckworth, Matthews, Kelly, Obasis, Larry, Heart, Baige, Sheasian/Sehasian, Franklin, Dr. G, Thomas, Meyers, and Dr. Butler, for failing to appear at Plaintiff's disciplinary hearings to advise the hearing committees of Plaintiff's mental condition;

**Count 8:** Eighth Amendment excessive force claims against Menard correctional officer Defendants Cox, McClure, Slabens, Leposky, and the Unknown (John Doe) Lieutenant, for beating Plaintiff on June 7, 2015, and/or failing to intervene to stop the beating;

**Count 9:** Eighth Amendment deliberate indifference claims against Menard correctional officer Defendants Cox, McClure, Slabens, Leposky, and the Unknown (John Doe) Lieutenant, for failing to obtain medical treatment for Plaintiff after the June 7, 2015,beating, and against Defendant nurse Stephanie for failing to treat Plaintiff or record his injuries and complaints of pain;

**Count 10:** Eighth Amendment deliberate indifference claims against Menard physician Defendants Trost and Joseph, for failing to treat Plaintiff's complaints about blood in his urine and pain in his stomach, side, and back, after Plaintiff's x-rays showed a razor blade inside his body;

**Count 11:** Claims against Defendants Chester Memorial Hospital and Joliet St. Joseph Hospital, for failing to evaluate or treat Plaintiff's mental condition when he was sent in for blood transfusions;

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff's claims in Counts 1-6, 8, 9, and 10 may proceed for further review against some of the named Defendants. Counts 7 and 11 fail to state a claim upon which relief may be granted, however, and they shall be dismissed at this time.

The complaint makes several brief references to possible additional claims, for example, retaliation and other incidents of excessive force. But Plaintiff fails to include sufficient facts or identify the officials who violated his rights in these instances, and for that reason, these potential claims do not survive review under § 1915A. Any additional claims not included in the above counts are dismissed at this time without prejudice.

Plaintiff's claims against officials in Pontiac, Stateville, and Western Illinois Correctional Centers involve Defendants who are not located within the Southern District of Illinois. Because Plaintiff asserts that systemic problems and department-wide policies caused some of the deprivations of his constitutional rights, these claims shall be allowed to proceed together in the

same action in this District at this time. Plaintiff is advised, however, that as the case proceeds, the Court may determine that severance of some claims and/or a transfer of some claims to another federal district court may be appropriate. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits).

The Court notes that a class action raising many of the same claims as Plaintiff brings in this case is pending in the Central District of Illinois: *Rasho v. Walker*, Case No. 07-cv-1288-MMM (*See* Third Amended Class Action Complaint, Doc. 260, filed Sept. 9, 2015). On August 14, 2015, the court certified the litigation class in *Rasho* as follows:

> Persons now or in the future in the custody of the Illinois Department of Corrections ("IDOC") [who] are identified or should have been identified by the IDOC's mental health professionals as in need of mental health treatment as defined in the current edition of the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association. A diagnosis of alcoholism or drug addiction, developmental disorders, or any form of sexual disorder shall not, by itself, render an individual mentally ill for the purposes of this class definition.

(Doc. 252, p. 7, in *Rasho*).

According to Plaintiff's allegations, he is a member of this class as defined in *Rasho*. The *Rasho* case seeks injunctive relief only, in order to remedy the alleged problems of inadequate access to mental health treatment within Illinois prisons, and frequent and extended punishment of mentally ill inmates with isolation/segregation, which exacerbates their mental health problems. The court in *Rasho* has noted that an inmate who wishes to seek damages arising from deliberate indifference to a mental health condition must do so in an individual action, as Plaintiff has done here. Should the court order injunctive relief in *Rasho*, it may overlap with or render moot some of Plaintiff's requested relief.

## **Deliberate Indifference to Serious Medical/Mental Health Needs - Overview**

In order to state a claim for deliberate indifference to a serious medical need, an inmate

must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. The Seventh Circuit has found that "the need for a mental illness to be treated could certainly be considered a serious medical need." *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001); *see also Wellman v. Faulkner*, 715 F.2d 269 (7th Cir. 1983). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Plaintiff's allegations of his self-harming and other disruptive behavior, as well as his history of mental illness prior to his incarceration, indicate that he suffers from one or more serious mental health conditions. At the pleading stage, he has satisfied the objective portion of an Eighth Amendment claim. The remaining question, as to Counts 1, 2, 4, 5, 6, 9, 10, and 11, is whether the various Defendants were deliberately indifferent to Plaintiff's need for mental health and/or medical treatment.

**Count 1 – Defendants Wexford Health Sources and Directors of the Illinois Department of Corrections**

Plaintiff's overarching claim is that the officials who establish the policies of Wexford Health Sources and the Illinois Department of Corrections failed to maintain adequate mental health services by which he could obtain necessary treatment for his mental illness; failed to train their staff to properly handle inmates with mental illness, particularly in the context of disciplinary proceedings; and had a policy of punishing mentally ill inmates such as himself for their negative behavior. These policies resulted in Plaintiff being denied mental health treatment in each of the prisons where he has been confined.

Plaintiff names two top administrators of Wexford Health Sources, Inc. ("Wexford") as Defendants (the Director and Mental Health Director). The Court construes this as an indication that Plaintiff seeks to hold Wexford (as a corporate entity) liable for the deprivation of his constitutional rights. Wexford is a corporation that employs the individual mental health provider Defendants and provides mental health and medical care at the prison, but it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Plaintiff's allegations suggest that his inability to obtain mental health treatment from the individual Defendants is, at least in part, the result of an official policy espoused by Wexford through the Defendant Wexford Director and the Defendant Wexford Mental Health Director. *See Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015) (inmate stated a claim against Wexford based on its policy/practice limiting the treatment a nurse could give in the absence of a doctor, and its practice of not having a doctor available at all

times). Therefore, Plaintiff's claim against Wexford, through the Defendant Director and Defendant Mental Health Director, may proceed at this stage.

Plaintiff cannot sue Defendants Godinez and Stolworthy, who are former Directors of the Illinois Department of Corrections ("IDOC"), for damages in their official capacity. The IDOC is a state government agency, and the Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment). An agency director in his official capacity may be sued, however, for injunctive relief. Plaintiff's claims that the Directors' policies resulted in the denial of mental health treatment, and his request for injunctive relief (to be evaluated and treated for his mental health conditions), are cognizable in a civil rights action. For this reason, the IDOC Director, in his official capacity, shall remain as a party. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

Plaintiff's allegations do not suggest that either Defendant Godinez or Stolworthy was personally involved in any deprivation of Plaintiff's constitutional rights. Therefore, all claims against these Defendants in their personal capacity shall be dismissed, and Defendants Godinez and Stolworthy shall be dismissed from the action.

To summarize, the deliberate indifference claims in **Count 1** shall proceed against the Director and the Mental Health Director of Wexford Health Sources and against the Director of the Illinois Department of Corrections (in his/her official capacity only).

## Count 2 – Deliberate Indifference – Wardens

Plaintiff alleges that Wardens Williams (Western CC), Beasten (Pontiac), and Limpski (Stateville) failed to train their employees to properly interact with prisoners like himself who suffer from mental illness. Their policies resulted in Plaintiff incurring disciplinary charges and sanctions, particularly long-term segregation which isolated him from human contact for long periods, due to behavior that resulted from his mental illness. The wardens also failed to make adequate mental health services available to Plaintiff while he was in segregation.

At this stage, Plaintiff's allegations that the wardens' policies, practices, and failure to train staff amounted to deliberate indifference to his serious mental health needs merits further review. **Count 2** shall thus proceed against Defendants Williams, Beasten, and Limpski.

## Count 3 – Due Process – Wardens

Plaintiff's claim that the wardens' policies allowed and encouraged prison officials to pursue disciplinary charges against him for behavior caused by his mental illness may also implicate his Fourteenth Amendment right to due process before he is deprived of a liberty interest. The prisons' disciplinary hearing procedures made no provision for the involvement of the prisons' mental health professionals, who, Plaintiff suggests, would have been able to confirm that his disruptive actions were a result of his mental illness, rather than calculated defiance on his part. Without any assistance from mental health staff, Plaintiff could not adequately defend himself during the disciplinary hearing process.

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court set out the minimal procedural protections that must be provided to a prisoner in disciplinary proceedings in which the prisoner loses good time, is confined to a disciplinary segregation, or is otherwise subjected to some comparable deprivation of a constitutionally protected liberty interest. *Id.* at 556-572.

> *Wolff* required that inmates facing disciplinary charges for misconduct be accorded [1] 24 hours' advance written notice of the charges against them; [2] a right to call witnesses and present documentary evidence in defense, unless doing so would jeopardize institutional safety or correctional goals; [3] the aid of a staff member or inmate in presenting a defense, provided the inmate is illiterate or the issues complex; [4] an impartial tribunal; and [5] a written statement of reasons relied on by the tribunal. 418 U.S. at 563-572.

*Hewitt v. Helms*, 459 U.S. 460, 466 n.3 (1983). Due process also requires that the findings of the disciplinary tribunal must be supported by some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). Plaintiff's claim suggests that the wardens' policies may have improperly denied him the aid of a prison staff member in presenting a defense that his mental condition caused his behavior. This would arguably fall within the definition of a "complex" issue as noted in in the authority above.

Prisoners may pursue a claim for deprivation of a liberty interest without due process only under limited circumstances. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner*, 128 F.3d at 1175.

The Seventh Circuit has elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the

duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Marion*, 559 F.3d at 698; *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence").

In Plaintiff's case, he alleges that his confinement in disciplinary segregation has lasted for over five years. This length of time more than satisfies the "duration" requirement for a potential due process claim. As to the specific conditions of Plaintiff's confinement, he claims that the extended time in isolation has worsened his symptoms of mental illness, leading to self-mutilation and other self-harming behaviors. Further, he has been deprived of any meaningful mental health treatment during his time in segregation, as a result of policies promulgated by the Defendant Wardens (See Count 2). These allegations suggest that Plaintiff was subjected to atypical and significant hardships during his time in disciplinary segregation. At this stage of the litigation, Plaintiff's due process claims in **Count 3** merit further review, and they shall proceed against Defendants Williams, Beasten, and Limpski.[5]

## Count 4 – Deliberate Indifference – Pontiac Mental Health Provider Defendants

Plaintiff was in segregation in Pontiac between October 2010 and December 2012, and

---

[5] The Court notes that Plaintiff refers to having lost good conduct credits as the result of some unspecified disciplinary action(s). He does not indicate how many of the multitude of disciplinary actions that prolonged his stay in segregation may have also included a revocation of sentence credit. To the extent that any individual disciplinary case caused Plaintiff to lose good conduct credits, a civil rights claim based upon that proceeding would appear to be barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), unless and until the disciplinary "conviction" is expunged or invalidated. This is a matter that can only be resolved after further factual development. At this early stage, the claims in Count 3 shall proceed despite the potential *Heck* issue.

again between June 2013 and January 2015. He claims that he requested mental health treatment from Defendants Garland, Marano/Marono, Moss, Angus/Agnus, Alice/Allie, Duckworth, and Matthews, but they failed to evaluate him or properly treat him. Likewise, they did not transfer him to the mental health unit at Pontiac or refer him to an outside mental health facility.

Some of the above allegations indicate that one or more of the Pontiac Defendants may have been deliberately indifferent to Plaintiff's serious mental health condition. Other omissions may not implicate his constitutional rights–for instance, a referral to an outside facility may or may not have been medically necessary, and if not, would not amount to deliberate indifference. But Plaintiff's claims that he received virtually no meaningful mental health treatment from these Defendants, who were aware of his serious self-harming behavior, merit further review. Therefore, the deliberate indifference claims in **Count 4** against Pontiac Defendants Garland, Marano/Marono, Moss, Angus/Agnus, Alice/Allie, Duckworth, and Matthews, shall proceed at this stage.

Plaintiff also alleges that while he was in Pontiac, he was given medications (Haldol and Thorazine) that caused severe side effects and made his condition worse (Doc. 1, p. 7). He never identifies the doctors who prescribed these medications, however, and these brief facts do not suggest deliberate indifference. Therefore, all claims based on the provision of psychotropic medications to Plaintiff while at Pontiac are dismissed at this time without prejudice.

### Count 5 – Deliberate Indifference – Stateville Mental Health Provider Defendants

Plaintiff raises similar allegations of deliberate indifference to his serious mental health condition against Stateville mental health provider Defendants Kelly, Obasis, Larry, and Heart. While Plaintiff was in segregation at Stateville between December 2012 and June 2013, he swallowed harmful objects and mutilated himself. He states that these Stateville mental health

professionals did nothing to treat his serious medical/mental health needs. At this stage, therefore, Plaintiff's deliberate indifference claims against Stateville Defendants Kelly, Obasis, Larry, and Heart in **Count 5** shall proceed for further review.

## Count 6 – Deliberate Indifference – Menard Mental Health Provider Defendants

As with Counts 5 and 6 above, Plaintiff claims that since the time he was transferred to Menard in January 2015, Defendants Baige, Sheasian/Sehasian, Franklin, Dr. G, Thomas, Meyers, and Dr. Butler have failed to treat his mental illness. They have been aware of his deteriorating mental condition and self-harming behavior. The deliberate indifference claims in **Count 6** against Defendants Baige, Sheasian/Sehasian, Franklin, Dr. G, Thomas, Meyers, and Dr. Butler, shall also receive further consideration.

## Dismissal of Count 7 – Due Process – Mental Health Provider Defendants

This count is premised on Plaintiff's claim that none of the individual mental health providers listed in Counts 4, 5, and 6 ever testified on his behalf at any of his multiple disciplinary hearings, and they have done nothing to help him get out of segregation. Based on the current complaint, Plaintiff has failed to state a claim upon which relief may be granted for a violation of his due process rights by these Defendants.

Plaintiff never indicates that he ever requested any of the mental health providers (Defendants Garland, Marano/Marono, Moss, Angus/Agnus, Alice/Allie, Duckworth, Matthews, Kelly, Obasis, Larry, Heart, Baige, Sheasian/Sehasian, Franklin, Dr. G, Thomas, Meyers, and Dr. Butler) to assist him or testify for him at any disciplinary hearing. Further, the claim designated as Count 3 asserts that the prisons' policies, promulgated by the wardens of the respective institutions, did not provide any mechanism for mental health providers to participate in disciplinary proceedings involving mentally ill inmates. Section 1983 creates a cause of action

based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotations and citations omitted). Thus, if the mental health provider Defendants were not asked by Plaintiff to assist him during his disciplinary hearings, and the prevailing policies/practices had no provisions for involving the mental health providers in the disciplinary hearing process, these individuals cannot be held liable for depriving Plaintiff of a liberty interest without due process.

For these reasons, the due process claims in **Count 7** against Defendants Garland, Marano/Marono, Moss, Angus/Agnus, Alice/Allie, Duckworth, Matthews, Kelly, Obasis, Larry, Heart, Baige, Sheasian/Sehasian, Franklin, Dr. G, Thomas, Meyers, and Dr. Butler, shall be dismissed without prejudice.

## Count 8 – Excessive Force – Menard Correctional Officer Defendants

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001). Further, a guard who observes a fellow officer assaulting a prisoner,

yet does nothing to stop the use of excessive force, can be held equally liable for an Eighth Amendment violation. *See Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972); *see also Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (collected cases); *Archie v. City of Racine*, 826 F.2d 480, 491 (7th Cir. 1987).

Here, Plaintiff states that on June 7, 2015, Defendant Cox and the Unknown Shift Lieutenant sprayed him with mace or pepper spray, grabbed him by his throat, and beat him. Defendants McClure, Slabens, and Leposky were also present and either participated in the attack, or watched the assault without intervening to stop it (Doc. 1, pp. 12, 15-16). Based on these factual allegations, Plaintiff may proceed with his excessive force claim in **Count 8** against Defendants Cox, McClure, Slabens, Leposky, and the Unknown (John Doe) Shift Lieutenant. Of course, before the Unknown Defendant can be served, Plaintiff must identify him by name.

## Count 9 – Deliberate Indifference – Menard Correctional Officer Defendants

Although Defendants Cox, McClure, Slabens, Leposky, and the Unknown (John Doe) Shift Lieutenant are not medical providers, the Seventh Circuit has held that a guard who uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise[.]" *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996). Thus, the Defendants who perpetrated the assault (as well as those who failed to intervene to stop it) and then allegedly prevented Plaintiff from getting immediate medical attention for his injuries, may be found liable for deliberate indifference to Plaintiff's need for medical care. Plaintiff does note that these Defendants allowed him to see Defendant Nurse Stephanie after the attack, but she did not record any of his injuries or complaints of pain, and did not treat him. These Defendants did not send Plaintiff to Health Care for any treatment or x-rays, and he received no further medical attention until the following day, when an x-ray was taken.

At this stage, Plaintiff's factual allegations suffice to suggest that the actions of Defendants Cox, McClure, Slabens, Leposky, the Unknown (John Doe) Shift Lieutenant, and Defendant Nurse Stephanie resulted in the denial and/or delay of medical care for Plaintiff's injuries. Plaintiff may thus proceed on his claims in **Count 9** against these Defendants for deliberate indifference to his serious medical needs.

## Count 10 – Deliberate Indifference – Menard Physician Defendants

According to Plaintiff, Defendant Trost ordered an x-ray which showed that Plaintiff had ingested a razor blade, however, he failed to examine or treat Plaintiff for this condition. For several months thereafter, Plaintiff complained to Defendants Trost and Joseph about blood in his urine, and pain in his back, stomach, and side. Both physicians ignored Plaintiff's pleas for help. Based on these allegations, Plaintiff may also proceed with his deliberate indifference claims in **Count 10** against Defendants Trost and Joseph.

## Dismissal of Count 11 – Hospitals

The claim against St. Joseph Hospital in Joliet, Illinois, is based on Plaintiff's allegations that he was sent to that institution on seven different occasions but was never evaluated by a mental health professional, even though he told doctors that he was trying to harm himself. Plaintiff was sent to St. Joseph for one or more blood transfusion(s) during the time he was incarcerated at Stateville. St. Joseph, he asserts, has no policy to deal with mentally ill patients, thus he was denied needed care.

The complaint does not allege that St. Joseph Hospital or any of its doctors had a contractual relationship with Stateville or with the IDOC to provide medical care to prisoners. Whether or not St. Joseph Hospital (or any private physician) can be considered a "state actor" is a key factor in determining whether Plaintiff can maintain a constitutional claim for deliberate

indifference to a medical/mental health condition against such a Defendant. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822-30 (7th Cir. 2009). A plaintiff cannot proceed with a federal claim under § 1983 against a non-state actor. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Gayman v. Principal Fin. Servs., Inc.*, 311 F.3d 851, 852-53 (7th Cir. 2003). A mere referral of a prisoner for treatment by an outside medical provider does not transform such a provider into a state actor that may be sued under § 1983; more is required. Plaintiff does not claim that such a contractual relationship existed here.

Additionally, the facts related by Plaintiff show that he was sent to St. Joseph for a particular treatment–a blood transfusion–and there is no indication that St. Joseph or any provider employed there had the authority to evaluate Plaintiff's mental health condition or render any other treatment to Plaintiff beyond the specific issue that prompted his referral to the outside hospital. Considering all these factors, the complaint fails to state a constitutional claim upon which relief may be granted against Defendant St. Joseph Hospital. This portion of Count 11 shall be dismissed without prejudice.

As to Defendant Chester Memorial Hospital, Plaintiff's claim is even less clear. He was sent to Chester Memorial Hospital for a blood transfusion on or about June 2, 2015, after an x-ray performed at Menard showed he had a razor blade inside him. He states that the Menard officials who referred him for the blood transfusion did not inform anybody at Chester Memorial Hospital that Plaintiff had swallowed the razor blade and that it was still there. Plaintiff does not articulate any claim against this hospital, so the Court cannot discern whether he seeks to hold Chester Memorial liable for failing to discover the razor blade, failing to treat him for swallowing the blade, or for failing to provide him with mental health services. And, as discussed above with reference to St. Joseph Hospital, the complaint does not indicate that

Chester Memorial Hospital was a "state actor" susceptible to a civil rights claim.

Plaintiff fails to state a cognizable civil rights claim against either Defendant St. Joseph Hospital, or Defendant Chester Memorial Hospital. **Count 11**, and each of these Defendant Hospitals shall be dismissed without prejudice.

## Other Unknown (John Doe) Defendants

In his list of Defendants, Plaintiff includes an unnamed "doctor/psychiatrist" (Defendant 5) and an unidentified "mental health psychologist" (Defendant 6), both employed at Western Illinois Correctional Center (Doc. 1, p. 18). He does not, however, refer to these individuals elsewhere in the complaint, and thus he does not state a cognizable claim against them. These Unknown Defendants shall be dismissed from the action without prejudice at this time.

## Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Wilkerson for further consideration.

## Disposition

The Clerk is **DIRECTED** to add Dr. Matthews (psychiatrist at Pontiac C.C.), Ms. Thomas (mental health worker at Menard C.C.), Ms. Meyers (mental health worker at Menard C.C.), and the Director of the Illinois Department of Corrections (official capacity only) as party Defendants.

**COUNTS 7 and 11** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Defendants **GODINEZ, STOLWORTHY, MEMORIAL HOSPITAL-CHESTER, ST. JOSEPH HOSPITAL,** and **TWO UNKNOWN PARTY DEFENDANTS (Doctor, Western IL CC; and Mental Health Psychologist, Western IL CC)** are **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for Defendants **WEXFORD HEALTH SOURCES (Director), WEXFORD HEALTH SOURCES (Mental Health Director), WILLIAMS, GARLAND, MARONO/MARANO, ANGUS/AGNUS, ALLIE/ALICE, DUCKWORTH, BEASTEN, KELLY, OBASIS, LARRY, HEART, LIMPSKI, BUTLER, BAIGE, SEHASIAN/SHEASIAN, FRANKLIN, TROST, JOSEPH, COX, STEPHANIE, McCLURE, SLABENS, LEPOSKY, MATTHEWS, THOMAS, MEYERS, DR. G. (Mental Health Doctor at Menard),** and the **DIRECTOR of the ILLINOIS DEPARTMENT of CORRECTIONS (Official Capacity**): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown Defendant (John Doe Shift Lieutenant at Menard) until such time as Plaintiff has identified him by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the name and service address for this individual, and any other Defendant (such as Menard Dr. G) who cannot be identified based on the information in the complaint.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending

the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a

stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  November 2, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**