IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-920-NJR-DGW |
| | ) | |
| WEXFORD HEALTH SOURCES (*Director*), | ) | |
| WEXFORD HEALTH SOURCES (*Mental Health Director*), TERRY WILLIAMS, DR. GARLAND, DR. MARONO, MS. MOSS, MR. ANGUS, MR. ALLIE, MS. DUCKWORTH, WARDEN BEASTEN, DR. KELLY, DR. OBASIS, MS. LARRY, MS. HEART, WARDEN LIMPSKI, DR. BUTLER, DR. BAIGE, DR. SEHASIAN, MR. FRANKLIN, DR. TROST, DR. JOSEPH, OFFICER COX, MS. STEPHANIE, MCCLURE, C/O SLABENS, C/O LEPOSKY, DR. MATTHEWS, MS. THOMAS, MS. MEYERS, DIRECTOR ILLINOIS DEPARTMENT OF CORRECTIONS, Dr. G, and UNKNOWN PARTY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment on Exhaustion

filed by all of the named Defendants[1] be **GRANTED IN PART and DENIED IN PART** (Doc. 109) and that the Court adopt the following findings of fact and conclusions of law.

## INTRODUCTION

Plaintiff, Michael Jackson, filed a 42 U.S.C. § 1983 complaint on August 19, 2015 (Doc. 1) alleging that various officials at the prisons in which he was incarcerated had been deliberately indifferent to his mental and medical health needs. Plaintiff's list of allegations is lengthy – by way of summary, he alleges that from 2010 to the present he has suffered from severe mental problems (which have caused, in part, self-mutilation) which have not been adequately treated and which have either caused or led to disciplinary actions, retaliation, deplorable conditions of confinement, and assaults. Plaintiff has been permitted to proceed on the following claims:

> **Count 1:** Eighth Amendment deliberate indifference claim against Defendants Wexford Health Sources (Director and Mental Health Director) and Director of the Illinois Department of Corrections (in his/her official capacity), for maintaining policies and practices, including the failure to train their employees, that resulted in the denial of mental health treatment to Plaintiff during his incarceration in Western, Pontiac, Stateville, and Menard; as well as his continued

---

[1] There are a total of 32 Defendants in this matter. 26 of those Defendants seek summary judgment: **William Alley** ("Mr. Allie"), **Alton Angus** ("Mr. Angus"), **Dr. Mirza Baig** ("Dr. Baige"), **Dr. Sylvia Butler** ("Dr. Butler"), **Curtis Cox** ("Officer Cox"), **Linda Duckworth** ("Ms. Duckworth"), **Shelley Franklin** ("Ms. Franklin"), **John Garlick** ("Dr. Garland"), **Elizabeth Hart** ("Ms. Heart"), **John R. Baldwin** ("Director Illinois Department of Corrections"), **Dr. Jonathan Kelly** ("Dr. Kelly"), **Dr. Catherine Larry** ("Ms. Larry"), **Garrett Leposky** ("C/O Leposky"), **Michael Lemke** ("Warden Limpski"), **Daidra Marano** ("Dr. Marono"), **Christopher McClure** ("McClure"), **Cortney Meyers** ("Ms. Meyers"), **Andrea Moss** ("Ms. Moss"), **Dr. Saleh Obaisi** ("Dr. Obasis"), **Randy Pfister** ("Warden Beasten"), **Dr. Sudarshan Suneja** ("Dr. Sehasian"), **Joel Slavens** ("C/O Slabens"), **Rebecca Stefani** ("Ms. Stephanie"), **Brook Thomas** ("Ms. Thomas"), **Dr. John Trost** ("Dr. Trost"), and **Tarry Williams** ("Terry Williams"). The remaining 6 Defendants are: Wexford Health Sources (Director), Wexford Health Sources (Mental Health Director), Dr. G, Dr. Joseph, Dr. Matthews, and Unknown Party (John Doe Shift Lieutenant at Menard), who have not entered an appearance. Defendant Dr. G., who is listed in Count 6, was improperly terminated by the Clerk on November 2, 2015.

placement in segregation as punishment for behavior caused by his mental illness;

**Count 2:** Eighth Amendment claim against Defendant Wardens Williams, Beasten, and Limpski, for failing to train staff to deal with mentally ill prisoners such as Plaintiff, maintaining a policy of punishing Plaintiff and other mentally ill prisoners for behavior caused by mental illness rather than providing mental health treatment, and failing to provide adequate mental health services to Plaintiff while he was in punitive segregation;

**Count 3:** Fourteenth Amendment due process claim against Defendant Wardens Williams, Beasten, and Limpski, for failing to have a policy to assist mentally ill prisoners facing disciplinary hearings, causing Plaintiff to incur disciplinary sanctions including long-term segregation for behaviors caused by his mental illness;

**Count 4:** Eighth Amendment deliberate indifference claims against Pontiac mental health provider Defendants Garland, Marano/Marono, Moss, Angus/Agnus, Alice/Allie, Duckworth, and Matthews, for failing to provide Plaintiff with treatment for his serious mental illness;

**Count 5:** Eighth Amendment deliberate indifference claims against Stateville mental health provider Defendants Kelly, Obasis, Larry, and Heart, for failing to provide Plaintiff with treatment for his serious mental illness;

**Count 6:** Eighth Amendment deliberate indifference claims against Menard mental health provider Defendants Baige, Sheasian/Sehasian, Franklin, Dr. G, Thomas, Meyers, and Dr. Butler, for failing to provide Plaintiff with treatment for his serious mental illness;

**Count 8:** Eighth Amendment excessive force claims against Menard correctional officer Defendants Cox, McClure, Slabens, Leposky, and the Unknown (John Doe) Lieutenant, for beating Plaintiff on June 7, 2015, and/or failing to intervene to stop the beating;

**Count 9:** Eighth Amendment deliberate indifference claims against Menard correctional officer Defendants Cox, McClure, Slabens, Leposky, and the Unknown (John Doe) Lieutenant, for failing to obtain medical treatment for Plaintiff after the June 7, 2015, beating, and against Defendant nurse Stephanie for failing to treat Plaintiff or record his injuries and complaints of pain;

**Count 10:** Eighth Amendment deliberate indifference claims against Menard physician Defendants Trost and Joseph, for failing to treat Plaintiff's complaints about blood in his urine and pain in his stomach, side, and back, after Plaintiff's x-rays showed a razor blade inside his body.

Only Defendants who have entered an appearance have sought summary judgment on the

affirmative defense of failure to exhaust administrative remedies. Plaintiff, who has been appointed counsel, responded on September 30, 2016 (Doc. 117) and Defendants replied on October 13, 2016 (Doc. 118). A hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir, 2008), was held on February 27, 2017 in which Plaintiff testified along with David Dwight, an Officer Coordinator for the grievance office.

### FINDINGS OF FACT

The Illinois Department of Corrections' records reveal that only two grievances that may be related to this matter were submitted by Plaintiff.

On April 18, 2011, Plaintiff submitted an emergency grievance while housed at Pontiac CC where he complained that foreign objects (pen cartridges) were stuck in his penis. Plaintiff refers to "everyone" and a doctor denying him medical care and seeks removal of the objects (Doc. 110-3, p. 4). A counselor responded on April 19, 2011 and the Warden determined that the matter was not an emergency on April 26, 2011 (*Id.*). A grievance officer recommended that the grievance be mooted, because Plaintiff had an upcoming urology appointment, and the Warden concurred on what appears to be May 1, 2011 (the date is unreadable) (*Id.* 3). The record does not contain a response from the Administrative Review Board.

A second emergency grievance dated August 3, 2015 also was received by prison authorities (Doc. 110-1, p. 4). The grievance, which was submitted while Plaintiff was housed at Menard CC, states that he was denied medical care by "Nurse Nicole," Correctional Officer "Barker," Correctional Officer McClure and an unknown nurse for pain and blood in his urine.[2] Plaintiff requested medical care in the "relief requested" sections. The grievance was deemed not an emergency by the Warden (Kimberly Butler) on August 7, 2015 and Plaintiff was directed

---

[2] Only McClure is a Defendant herein – Plaintiff claims that he used excessive force on June 7, 2015.

to submit the grievance in the normal manner. Plaintiff appealed to the Administrative Review Board (ARB), which received the appeal on August 26, 2015. In a September 3, 2015 response, Plaintiff was instructed to re-submit with the grievance officers and Warden's responses (Doc. 110-1, p. 3). There is no indication in the record that Plaintiff followed this instruction.

David Dwight testified that when a counselor receives a grievance, she/he makes a notation in the CHAMPS systems as well as making a response on the grievance form. The grievance is logged by the grievance office when received from an inmate after the counselor responds. If the grievance is marked an emergency, it appears to be logged in the Emergency Grievance Log (Doc. 110-2, p. 2-3) whether it is deemed and emergency or not. Besides the two grievances above, there is no log of any additional grievances submitted by Plaintiff.

Plaintiff states that he had attempted to submit 20 to 30 grievances, most of which were emergency grievances, during the course of his incarceration (Doc. 117-1, pp. 2, 4). While in segregation, where he was housed for the most part, he could only acquire grievance forms from correctional officers: these officers would either refuse or fail to provide them (*Id*. 3). When Plaintiff did acquire a form, he would submit it by placing it in an envelope, putting his name on it, addressing it to the Warden, and handing it to a correctional officer, like Correctional Officer Compton (*Id*.). He has used this procedure whenever he submitted grievances but has only received one response, to the August 3, 2015 grievance (*Id*.). Plaintiff even inquired about the status of his grievances around August 18, 2015 but was told that only the August 3, 2015 grievance had been received (Doc. 110-2, p. 5). Plaintiff states that he is unaware of grievance procedures, he has not been informed of what those procedures may be by IDOC personnel, and he has never been told that the manner in which he submits grievances is incorrect (*Id*.).

None of the parties, in their written submissions have provided either Plaintiff's medical

records or his prison transfer records. At the hearing, however, Plaintiff testified that he was housed at Pontiac CC until July to August, 2010, that he was then transferred to Western Illinois CC and returned back to Pontiac on October 4, 2010 where he remained until December 18, 2012. During his time at Pontiac, Plaintiff testified that he submitted 4 grievances.

After Pontiac, Plaintiff was transferred to Stateville CC where he remained until July 4 or 27, 2013. He testified that he filed "a lot" of grievances at Stateville. From Stateville, Plaintiff was transferred back to Pontiac where he remained until January 16 or February 2015. Plaintiff submitted "quite a few" grievances during this stint at Pontiac. After Pontiac, he was transferred to Menard CC where he remained throughout much of 2015. While at Menard, Plaintiff filed "a handful" of grievances. Plaintiff currently is housed at Dixon CC (he was transferred there in February 2016) where he indicates his medical and mental health care needs are being addressed. Of the grievances submitted, "most" were emergency grievances.

During this time period, Plaintiff testified that he was mostly in segregation except when he attempted to hurt himself, at which point he was moved to the healthcare unit and placed in 4-point restraints. He noted that he had been diagnosed with an "affective" disorder and bipolar disorder although he doesn't know what it means. He takes medications, although there is no evidence of what kind, which cause forgetfulness. He attempted to speak to his counselors about his issues at the various prisons -- they either would not speak with him or no action was taken. Plaintiff further indicates that he was only able to hand grievances to correctional officers while in segregation, and not, presumably, to his counselor. He submitted grievances by filling them out, putting his name and the warden's name on the envelope and giving it to the correctional officers on duty. However, he did not have ready access to pens (because he was suspected of attempting to hurt himself with them) or paper. He was not able to copy his grievances or keep

records.

As to the grievance process itself, Plaintiff testified that he had no familiarity with the process because he never participated in an orientation nor did he have access to an orientation manual. The first time he did have an orientation and a manual was when he was transferred to Dixon CC in February 2016. Plaintiff sought help from other inmates (including "Crazy Corey" and "Tidy") in order to fill out and submit grievances. Plaintiff appeared to indicate that he would harm himself in order to be sent to the healthcare unit where he could then solicit help from other inmates. There is no evidence, however, that he sought help from his counselors or other staff at the jails.

The Court inquired as to each Defendant, his claims against them, and the contents of the grievances that he wrote. In response, Plaintiff indicated the following as to the contents of the grievances:

**William Alley** ("Mr. Allie" – Count 4): mental health treatment;

**Alton Angus** ("Mr. Angus" – Count 4): in a 2011 grievance, Plaintiff indicated that he had strapped him down for a period of two months;

**Dr. Mirza Baig** ("Dr. Baige" – Count 6): blood transfusion;

**Dr. Sylvia Butler** ("Dr. Butler" – Count 6): mental health treatment;

**Curtis Cox** ("Officer Cox" – Count 8, 9): excessive force (use of mace);

**Linda Duckworth** ("Ms. Duckworth" – Count 4): mental and medical health treatment;

**Shelley Franklin** ("Ms. Franklin" – Count 6): mental and medical health treatment;

**John Garlick** ("Dr. Garland" – Count 4): mental health treatment;

**Elizabeth Hart** ("Ms. Heart" Count 5): mental health treatment;

**John R. Baldwin** ("Director Illinois Department of Corrections" – Count 1): lost

grievances (Plaintiff indicated that he wrote Director Baldwin a letter, not that he was named in a grievance);

**Dr. Jonathan Kelly** ("Dr. Kelly" – Count 5): prescribed medication to which Plaintiff was allergic;

**Dr. Catherine Larry** ("Ms. Larry" Count 5): mental health treatment;

**Garrett Leposky** ("C/O Leposky" – Count 8, 9): excessive force (stomped on Plaintiff and caused a fractured rib);

**Michael Lemke** ("Warden Limpski" – Count 2, 3): failure to protect against excessive force used by Leposky;

**Daidra Marano** ("Dr. Marono" – Count 4): mental health treatment – she refused to treat him because of his disciplinary history;

**Christopher McClure** ("McClure" – Count 8, 9): same claims as with Leposky (excessive force);

**Cortney Meyers** ("Ms. Meyers" – Count 6): mental health treatment;

**Andrea Moss** ("Ms. Moss" – Count 4): mental health treatment;

**Dr. Saleh Obaisi** ("Dr. Obasis" Count 5): failure to provide a blood transfusion;

**Randy Pfister** ("Warden Beasten" – Count 2, 3): a number of claims including keeping him in a cold cell, not providing clothes, compelling him to be restrained in the healthcare unit for weeks, directing inappropriate medical care;

**Dr. Sudarshan Suneja** ("Dr. Sehasian" – Count 6): mental health treatment;

**Joel Slavens** ("C/O Slabens" – Count 8, 9): excessive force (causing broken ribs);

**Rebecca Stefani** ("Ms. Stephanie" – Count 9): inadequate medical care when Plaintiff swallowed a razor;

**Brook Thomas** ("Ms. Thomas" – Count 6): mental health treatment;

**Dr. John Trost** ("Dr. Trost" – Count 10): refused to provide medical care for blood in urine, fractured rib, ink pen (cartridge) in penis, and self-mutilation;

and **Tarry Williams** ("Terry Williams" – Count 2, 3): failure to provide grievances while in segregation.

Throughout the hearing, Plaintiff was capable of understanding the questions that were being asked and answered in an appropriate and coherent manner. In light of the allegations in the Complaint, Plaintiff's clarity of thought was surprising. The Court is not aware of what medications, if any, Plaintiff was taking while at the hearing although he did indicate that his mental health treatment at Dixon was satisfactory. The Court also was impressed with Plaintiff's ability to distinguish each of Defendants and articulate, if only briefly, his complaints against them. This Court finds Plaintiff credible in his statements that he submitted multiple grievances regarding the claims in this case but that he did not receive responses. The Court finds Plaintiff credible in his assertion that his counselors told him to submit grievances to the correctional officers because he was in segregation. The prisons would not have any way of logging when a grievance was submitted to a correctional officer unless that officer handed it to a counselor or put it in the grievance box for the grievance officer. Officer Dwight himself had no familiarity with Plaintiff or the grievances that he submitted. Plaintiff is credible in his claim that no one indicated to him that the manner in which he was grieving his issues was inappropriate. Moreover, there is no evidence in the record that Plaintiff ever received an orientation or a manual describing how for submit grievances. Finally, the court finds Plaintiff credible in his claim that he did not receive responses to his grievances. However, in light of the clarity of Plaintiff's testimony, this Court finally finds that the grievances that Plaintiff did write were limited to the issues that he set forth at the hearing and which are listed above.

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is Athe put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.@ *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182

F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* §504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO

in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

The two grievances in the record, dated April 18, 2011 and August 3, 2015 are not relevant to these proceeding. The April 18, 2011 grievance concerns claims – lack of medical care -- while he was housed at Pontiac that are not a subject of this lawsuit. The second grievance either does not concern a claim or Defendant in this matter. Even if this grievance was

sufficient to exhaust as to any of Plaintiff's claims, the Court finds that Plaintiff failed to sufficiently exhaust by failing to submit the grievance in the normal manner as indicated by the Warden and the ARB. *See Edens v. O'Brien*, Case No. 14 CV 50056, 2016 WL 4191756 (N.D. Ill. August 9, 2016). Even if Plaintiff's actions were sufficient, the ARB did not respond to the appeal until after this lawsuit was filed – a response that was timely and consistent with the time periods outlined in the Administrative Code. Neither of these grievances exhausts Plaintiff's claims herein.

As noted above, this Court finds Plaintiff credible in his assertion that he filed additional grievances and further that he filed grievances for the reasons set forth at the hearing. This Court also finds that Plaintiff submitted the grievances in the proper and only manner available, by handing them to the correctional officers. And, Plaintiff is deemed to have submitted these grievances in a timely manner, with sufficient factual detail, and to have named the appropriate defendant. *See* ILL. ADMIN. CODE TIT. 20, § 504.810(b). Prison officials either failed to place the grievances in the grievance box or failed to respond. Therefore, the grievance process was rendered unavailable to Plaintiff.

This conclusion does not mean that Plaintiff exhausted all of the claims that are currently before the Court. Plaintiff set forth what claims he grieved at the hearing. Based on his testimony, which the Court finds credible but limited, Plaintiff exhausted or did not exhaust the following claims:

> **Count 1:** Plaintiff asserts a policy and practice claim against Defendant John R. Baldwin ("Director Illinois Department of Corrections"). At the hearing, however, Plaintiff indicated that this Defendant lost grievances and that Plaintiff wrote him a letter about that. There is no evidence that Plaintiff submitted a grievance about Defendant Baldwin's conduct or a policy or practice of the IDOC that led to constitutional violations. As such, Plaintiff has failed to exhaust as to Baldwin in Count 1

**Count 2:** Plaintiff claims that Wardens Tarry Williams ("Terry Williams"), Randy Pfister ("Warden Beasten"), and Michael Lemke ("Warden Limpski") failed to train staff, maintain unconstitutional polices, and failed to provide adequate mental health care. At the hearing, Plaintiff stated in grievances that Warden Williams failed to provide grievances while he was housed in segregation; that Warden Pfister, in part, directed inappropriate healthcare and unconstitutional conditions of confinement; and that Warden Lemke failed to protect him against excessive force. Only the grievance submitted against Warden Pfister is related to the claim made in the complaint. As such, Plaintiff has failed to exhaust as to Wardens Williams and Lemke in Count 2.

**Count 3:** Plaintiff claims that Wardens Williams, Pfister, and Lemke violated his due process rights with respect providing assistance during disciplinary hearings. Plaintiff did not indicate at the hearing that any of his grievances concerned disciplinary hearings or sanctions. As such, Plaintiff has failed to exhaust as to Count 3.

**Count 4:** Plaintiff claims that while at Pontiac CC, Defendants Dr. John Garlick ("Dr. Garland"), Dr. Daidra Marano ("Dr. Marono"), Andrea Moss ("Ms. Moss"), Alton Angus ("Mr. Angus"), William Alley ("Mr. Allie"), and Linda Duckworth ("Ms. Duckworth") failed to provide treatment for his mental illness. Plaintiff stated in grievances and at the hearing that Dr. Garlick, Dr. Marano, Ms. Moss, Mr. Alley, and Ms. Duckworth failed to provide mental health treatment. Plaintiff also stated in a grievance that Defendant Angus kept him strapped down (presumably in response to Plaintiff's mental illness) for a period of 2 months in 2011. Plaintiff has therefore exhausted as to Count 4.

**Count 5:** Plaintiff claims that while at Stateville CC, Defendants Dr. Jonathan Kelly ("Dr. Kelly"), Dr. Saleh Obaisi ("Dr. Obasis"), Dr. Catherine Larry ("Dr. Larry"), and Elizabeth Hart ("Ms. Heart") filed to provide treatment for his mental illness. Plaintiff stated in grievances and at the hearing that Dr. Kelly prescribed medication to which he was allergic and that Dr. Obaisi failed to provide a blood transfusion. Neither of these claims appear to be related to Plaintiff's mental health. Plaintiff did state, however, that Dr. Larry and Ms. Hart failed to provide mental health treatment. As such, Plaintiff has failed to exhaust as to Drs. Kelly and Obaisi in Count 5.

**Count 6:** Plaintiff claims that while at Menard CC, Defendants Dr. Mirza Baig ("Dr. Baige"), Dr. Sudarshan Suneja ("Dr. Sehasian"), Brook Thomas ("Ms. Thomas"), Cortney Meyers ("Ms. Meyers"), Dr. Sylvia Butler ("Dr. Butler"), and Franklin and Dr. G (who are not moving Defendants), failed to provide retirement for his mental illness. Plaintiff stated in grievances and at the hearing that Dr. Baig failed to provide a blood transfusion. This does not appear related to his mental health. However, as to Dr. Suneja, Ms. Thomas, Ms. Meyers, and Dr. Butler, Plaintiff indicated that he submitted grievances related to his mental health treatment. As such, Plaintiff has failed to exhaust as to Dr. Baig in Count 6.

**Count 8:** Plaintiff claims that while at Menard, he was subjected to excessive force on June 7, 2015 by Defendants Curtis Cox (Officer Cox), Christopher McClure ("McClure"), Joel Slavens ("C/O Slabens"), Garrett Leposky ("C/O Leposky") and an unknown correctional officer. At the hearing and in grievances, Plaintiff stated that these correctional officers used excessive force by, in part, using mace, stomping on him, and causing a fractured rib. Plaintiff has exhausted as to this claim.

**Count 9:** Plaintiff claims that Defendants Curtis Cox (Officer Cox), Christopher McClure ("McClure"), Joel Slavens ("C/O Slabens"), Garrett Leposky ("C/O Leposky") and an unknown correctional officer in addition to Rebecca Stefani ("Ms. Stephanie") failed to provide medical care after the June 7, 2015 incident. Plaintiff did not states that the failure to provide medical care after the beating was a subject of his grievances. As to Ms. Stefani, Plaintiff claimed that she failed to provide medical care after he swallowed a razor and not due to any beating. Plaintiff has not exhausted as to any named Defendant in Count 9.

**Count 10:** Plaintiff claims that Menard doctors, Dr. John Trost ("Dr. Trost") and Dr. Joseph (who is not a moving Defendant) failed to attend to his medical needs. As to Dr. Trost, Plaintiff stated that he refused to provide treatment for blood in his urine, a fractured rib, an ink pen in his penis, and self-inflicted cuts. While the particular conditions are not identical to those outlined by the Court in Count 10, Plaintiff has sufficiently exhausted as to this claim against Dr. Trost.

In sum, the prison officials' failure to submit Plaintiff's grievances to the appropriate persons, rendered the grievance process unavailable and Plaintiff should be deemed to have exhausted his administrative remedies on the claims set forth above.

### RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary Judgment on Exhaustion filed by all of the named Defendants be **GRANTED IN PART and DENIED IN PART** (Doc. 109) and that the Court adopt the foregoing findings of fact and conclusions of law. In particular, the Motion should be **GRANTED IN PART** and the following Defendants/claims should be **DISMISSED WITHOUT PREJUDICE**:

1. John R. Baldwin ("Director Illinois Department of Corrections")**;**

2. The claims in Count 2 against Defendants Tarry Williams ("Terry Williams")

and Michael Lemke ("Warden Limpski");

3. Count 3;

4. The claims in Count 5 against Defendants Dr. Jonathan Kelly ("Dr. Kelly") and Dr. Saleh Obaisi ("Dr. Obasis");

5. The claim in Count 6 against Defendant Dr. Mirza Baig ("Dr. Baige"); and

6. Count 9.

If the District Court adopts this Report and Recommendation, the following claims would remain in this suit:

**Count 1:** Eighth Amendment deliberate indifference claim against Defendants Wexford Health Sources (Director and Mental Health Director) for maintaining policies and practices, including the failure to train their employees, that resulted in the denial of mental health treatment to Plaintiff during his incarceration in Western, Pontiac, Stateville, and Menard; as well as his continued placement in segregation as punishment for behavior caused by his mental illness;

**Count 2:** Eighth Amendment claim against Defendant Warden Randy Pfister, for failing to train staff to deal with mentally ill prisoners such as Plaintiff, maintaining a policy of punishing Plaintiff and other mentally ill prisoners for behavior caused by mental illness rather than providing mental health treatment, and failing to provide adequate mental health services to Plaintiff while he was in punitive segregation;

**Count 4:** Eighth Amendment deliberate indifference claims against Pontiac mental health provider Defendants Dr. John Garlick, Dr. Daidra Marano, Andrea Moss, Alton Angus, William Alley, Linda Duckworth, and Matthews, for failing to provide Plaintiff with treatment for his serious mental illness;

**Count 5:** Eighth Amendment deliberate indifference claims against Stateville mental health provider Defendants Dr. Catherine Larry and Elizabeth Hart, for failing to provide Plaintiff with treatment for his serious mental illness;

**Count 6:** Eighth Amendment deliberate indifference claims against Menard mental health provider Defendants Dr. Sudarshan Suneja, Franklin, Dr. G, Brook Thomas, Cortney Meyers, and Dr. Sylvia Butler, for failing to provide Plaintiff with treatment for his serious mental illness;

**Count 8:** Eighth Amendment excessive force claims against Menard correctional officer Defendants Curtis Cox, Christopher McClure, Joel Slavens, Garrett Leposky, and the Unknown (John Doe) Lieutenant, for beating Plaintiff on June

7, 2015, and/or failing to intervene to stop the beating;

**Count 10:** Eighth Amendment deliberate indifference claims against Menard physician Defendants Dr. John Trost and Joseph, for failing to treat Plaintiff's complaints about blood in his urine and pain in his stomach, side, and back, after Plaintiff's x-rays showed a razor blade inside his body.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: March 1, 2017**

                                      **DONALD G. WILKERSON**
                                      **United States Magistrate Judge**